UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

       Plaintiff,                            Case No. 1:06-CR-302

v.                                           HON. GORDON J. QUIST

LYNETTE MARY RODRIGUEZ, et al.,

       Defendants.
_____/

**OPINION**

The Defendants are charged with one count of conspiracy to make, possess, and utter counterfeit securities in violation of 18 U.S.C. § 513(a), plus five additional counts related to the particular counterfeit securities passed by each of the Defendants. Defendant, Lynette Mary Rodriguez, joined by Defendants Curtissa Rodriguez and Beverly Dimetrius Wilcher, have moved for dismissal of all counts in the indictment for lack of venue or, alternatively, to transfer the case to the United States District Court for the Northern District of Illinois pursuant to Federal Rule of Criminal Procedure 21(b). For the following reasons, the Court will transfer venue to the Northern District of Illinois.

**I. Background**

The indictment alleges the following events. Lynette Rodriguez ("Lynette"), in the course of her employment with BridgFord Foods of Chicago, Illinois, obtained a genuine check made by Northland Food Center of Kingsley, Michigan, and drawn on Northwestern Bank of Traverse City, Michigan. Lynette used this genuine check to create counterfeit securities with a value of

$96,188.56. Lynette, along with Curtissa Rodriguez ("Curtissa"), then allegedly sought out the other Defendants and requested and instructed those individuals to open accounts at The Customer First Bank, LaSalle Bank, Charter One Bank, and Liberty Bank, all of Chicago, Illinois. Lynette and Curtissa then provided counterfeit checks to the co-conspirators for deposit and subsequent withdrawal of the proceeds at the aforementioned banks in Chicago. The Defendants obtained approximately $92,307.06 from the banks.

## II. Discussion

**A.    Defendants' Motion to Dismiss All Counts for Lack of Venue**

The Government bears the burden of proving by a preponderance of the evidence that venue is proper as to each count contained in the indictment. *United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir.1992). It is well-established that venue may be proper in more than one location. *United States v. Brika*, 416 F.3d 514, 527 (6th Cir.2005). 18 U.S.C. § 3237(a) instructs that "any offense against the United States begun in one district and completed in another ... may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

The Sixth Circuit applies the "substantial contacts" test to determine the appropriate venue. *Brika*, 416 F.3d at 527. *See also United States v. [Lee] Williams*, 274 F.3d 1079, 1084 (6th Cir. 2001). The substantial contacts test "'takes into account a number of factors-the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding....'" *United States v. [Estel] Williams*, 788 F.2d 1213, 1215 (6th Cir. 1986) (quoting *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)).

Under the substantial contacts test, the factors indicate that venue is appropriate both in this District and in the Northern District of Illinois. With respect to the first factor, the indictment alleges

that the conduct of making, possessing, and uttering counterfeit securities occurred in Illinois, and not within the Western District of Michigan. The Government concedes that this factor of the test does not support venue in this Court.

The second factor requires an examination of the elements and nature of the charged crime. 18 U.S.C. § 513(a) provides:

> (a) Whoever makes, utters or possesses a counterfeited security of a State or political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than 10 years, or both.

In this case, the elements of 18 U.S.C. § 513(a) are divisible as: (1) whoever makes, utters or possesses a counterfeited security; (2) of an organization; (3) with intent to deceive another organization. The first element of the crime supports venue in Illinois, as the Government conceded that the Defendants resided in Illinois and alleges that the Defendants made, uttered, and possessed counterfeit securities in Illinois, not in Michigan.

The Government contends that the second and third elements support venue in this district. The Government argues that because it must prove that the counterfeit securities were "of an organization," and those organizations are located within the Western District of Michigan, that venue is proper in this District. Specifically, the indictment alleges that counterfeit securities were counterfeits of genuine checks made by Northland Food Center of Kingsley, Michigan, and drawn on the Northwestern Bank of Traverse City, Michigan. Both of these organizations are located within this District. The Government argues that this District is the appropriate venue because it will need to call witnesses and produce documents from these organizations to prove that the counterfeit securities were counterfeit securities of the checks made by Northland Food Center and drawn on

3

the Northwestern Bank.  The Government also argues that it must prove that these are actual organizations and that it will do so with witnesses from these organizations.

Under the third element of the statute, the Government contends that the Defendants ultimately intended to deceive Northland Food Center and Northwestern Bank.  The Government concedes that the Defendants also intended to deceive the four organizations in Illinois where the counterfeit securities were uttered.  However, the Government argues that the Defendants "specifically targeted" Northland Food Center and the Northwestern Bank "as the victims of their counterfeit securities conspiracy," and that without deceiving these two organizations, "the Defendants' conspiracy would be exposed." (Gov't Br. in Resp. to Mot. to Dismiss at 8.)  Therefore, the second factor of the substantial contacts test supports venue in both districts.

The third factor of the substantial contacts test considers the locus of the effect of the criminal conduct.  The Government argues that although the Defendants allegedly obtained approximately $92,307.06 from banks in Chicago, the ultimate effect of the crime would have been on the two organizations located in the Western District of Michigan, because that amount would have been eventually drawn from Northland Food Center's account at Northwestern Bank.  Therefore, according to the Government, venue is proper in this District because the ultimate victims in the chain of deceit are located in this District.  The Defendants note that the alleged making, possessing, and uttering of the counterfeit securities occurred in Chicago, and the uttering of the securities at four Chicago banks deceived these banks.  The banks then passed on these counterfeit securities to the two organizations located in this District.  Because, the effect of the crimes is felt on organizations in both Michigan and Illinois, the third factor supports venue in both districts.

4

The fourth factor of the test considers the suitability of the venue for accurate fact finding. The Government argues that its case depends on proving that the two organizations located in this District are actual, not fictitious, organizations and that the counterfeit securities were counterfeits of securities made by Northland Food Center and drawn on Northwestern Bank. The Government claims that this District is the appropriate venue because the Government will produce witnesses and documents from these two organizations to prove its case.

The Defendants argue that because the Defendants and the four banks at which the counterfeit securities were allegedly uttered are in Chicago, and all of the charged acts of making, possessing, and uttering counterfeit securities occurred there, that the Northern District of Illinois is more suitable for fact finding. The Defendants also note that there is no allegation that the alleged scheme was planned or conducted in Michigan or that the Defendants ever traveled to Michigan. The only connection to this District, according to the Defendants, is that the counterfeit securities were made and drawn on two organizations in this District. The Defendants also argue that it is easier for the Government to bring its witnesses and documents from Northland Food Center and Northwestern Bank to Chicago than it is for Defendants and witnesses from Illinois to appear in Michigan.

The Government responds by asserting that the substantial contacts test considers "the suitability of each district for accurate fact finding," not convenience of fact finding.[1] However, in *United States v. [Lee] Williams*, 274 F.3d 1079 (2001), the Sixth Circuit found venue to be most suitable for fact finding in Texas, "because the defendants live in Texas, their families, friends, and

---

[1] Yet the Government argues that "the computer software and check paper used by Defendants in their counterfeiting conspiracy may be easily transported into this District" and "other such evidence may be easily transported into this District." (Gov't Br. in Resp. to Mot. to Dismiss at 9.)

5

potential character witnesses live there and, as we have said, the offense and all of its elements, occurred there." *Id*. at 1085. Many of these reasons are cited by the Defendants as justification for venue in the Northern District of Illinois and, although these factors may apply to the convenience of fact finding, the Sixth Circuit has found that they are relevant under the substantial contact's element of suitability for accurate fact finding. The fourth factor tends to support venue in the Northern District of Illinois.

In this case, there is no dispute that venue in this District is supported to some degree because the two organizations upon which the counterfeit securities were made and drawn are located herein. Based on the substantial contacts test, venue is appropriate both in this District and in the Northern District of Illinois. Therefore, the Court will deny the Defendants' motion to dismiss for lack of venue.

**B.     Defendants' Alternative Request to Transfer Venue Under Rule 21(b)**

Alternatively, the Defendants ask that this case be transferred to the Northern District of Illinois for the convenience of the parties and in the interest of justice. Federal Rule of Criminal Procedure 21(b) governs transfer of venue for convenience:

> **(b) For Convenience.** Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.

The Supreme Court has cited a list of factors pertinent to a determination of whether a court should transfer a proceeding in the interest of justice. *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 84 S.Ct. 769 (1964). The factors are the "(1) location of [the] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to

the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer." *Id*. at 243-44, 84 S. Ct. at 771. *See also United States v. Collins*, No. 91-5215, 1992 WL 31302, at *4 (6th Cir. Feb.20, 1992); *United States v. Crutchfield*, 379 F.Supp.2d 913 (W.D. Tenn. 2005); *United States v. Lima*, No. 94 CR 800, 1995 WL 348105 (N.D. Ill. June 1, 1995); *United States v. Nat'l On Leong Chinese Merchants Ass'n*, No. 90 CR 760, 1991 WL 30673 (N.D. Ill. Feb. 15, 1991). "The burden rests on the [d]efendant to demonstrate that transfer would serve the purposes of the Rule." *Crutchfield*, 379 F.Supp.2d at 923 (citing *United States v. Tripp*, Nos. 91-5129, 91-5130, 1991 WL 203756, at *5 (6th Cir. Oct.7, 1991)). "Whether to transfer a case to another district lies within the discretion of the trial judge." *Id*. (citing *Collins*, 1992 WL 31302, at *4).

Based on these factors, the Court concludes that transfer of venue is appropriate. First, the location of the Defendants supports transfer to Illinois. Second, while the Government contends that it will be calling witnesses located in Michigan, because the charged acts occurred in Illinois and because the Defendants' potential character witnesses, if any, are likely to be in Illinois, the location of witnesses supports transferring venue to Illinois. *See [Lee] Williams*, 274 F.3d at 1085. Third, the Government concedes that the making, possessing, and uttering of the counterfeit securities occurred in Illinois. Fourth, the documents and records are likely to be found both at the four banks in Illinois as well as Northland Food and Northwestern Bank in Michigan. The fifth consideration, the disruption of a defendant's business, does not appear to apply.

Sixth, the expense to the Defendants would be greater should the proceedings be held in this District. The Defendants and potential witnesses to the charged acts are located in Chicago. While

some of the Government's witnesses reside in this District, it appears that they would have to travel even if proceedings were held in this Court.  Furthermore, the documents that the Government plans to introduce are more easily transported than the Defendants and their potential witnesses.   It appears that, based on the location of Northland Food Center and Northwestern Bank, that the Government will have to expend financial resources to transport witnesses and documents from these organizations regardless of whether venue is in this District or Illinois.  Therefore, the expense to the parties weighs in favor of transferring venue to Illinois.

Location of counsel does not appear to be a factor of considerable weight, as the Government has the ability to prosecute in Illinois and the Defendants' counsel, among them the Federal Public Defender, have asked for transfer of venue. Accessibility likewise does not appear to be a factor. Under the ninth factor, the docket condition of this Court (having only one "active" judge for a four judge court) supports transfer of venue.  Finally, the Court is not aware of any other "special elements" which would affect its decision regarding the transfer of venue.

While the Government correctly contends that the Defendants bear the burden of establishing that transferring venue is appropriate for the convenience of the parties and in the interest of justice, the Court does not agree with the Government's claim that the Defendants failed to supply facts supporting their motion.  The Defendants' arguments in support of their motion to dismiss are equally applicable to their alternative motion for a transfer of venue under Fed. R. Crim. P. 21(b) and do not need to be repeated with respect to each factor in *Platt*.  The Defendants have shown that transfer of venue is appropriate under the factors approved by the Supreme Court in *Platt*, and the Court will grant their motion to transfer this case to the Northern District of Illinois pursuant to Fed. R. Crim. P. 21(b).

## III.  Conclusion

For the reasons set forth above, the Court will deny Defendants' motion to dismiss for lack of venue and will grant Defendants' alternative motion to transfer venue to the Northern District of Illinois for the convenience of the parties and in the interest of justice pursuant to Federal Rule of Criminal Procedure 21(b).

An Order consistent with this Opinion will be entered.


Dated: May 2, 2007                               /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE